UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALFOUR BEATTY INFRASTRUCTURE, INC., <br><br> Plaintiff, <br><br> v. <br><br> PB&A, INC., <br><br> Defendant. | Case No. 16-cv-01152-WHO <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DISQUALIFICATION AND OTHER SANCTIONS** <br><br> Re: Dkt. No. 91 |

**INTRODUCTION**

During this litigation, defendant PB&A, Inc.'s counsel had *ex parte* contact with VAK Construction Engineering Services, LLC ("VAK"), which plaintiff Balfour Beatty Infrastructure, Inc. ("BBII") had retained as a non-testifying expert in an earlier, related dispute. As a result, BBII now moves to disqualify PB&A's counsel and for additional sanctions. For the reasons discussed below, the motion is GRANTED in part and DENIED in part.

**BACKGROUND[1]**

### A. Prior Proceedings

Construction problems arose during the building of the Transbay Transit Center in San Francisco (the "Project") that spurred a series of disputes. BBII was involved in state court proceedings filed in 2012, as well as a Dispute Resolution Board ("DRB") proceeding that began

---

[1] PB&A objects pursuant to Civil Local Rule 7-3(d)(1) to new evidence introduced in BBII's reply brief. Objections to Reply Evidence ("Surreply") (Dkt. No. 100). PB&A requests that BBII's Reply be stricken or, alternatively, that PB&A be given leave to submit the surreply contained in its objections. *Id.* at 3. In turn, BBII filed an administrative motion to strike PB&A's Objection to Reply Evidence under Civil Local Rule 7-3(d)(3), asserting that it introduces new argument and fails to identify a specific objection to the reply evidence. Dkt. No. 102. PB&A's request to strike BBII's Reply is DENIED, but its request to submit its surreply in response to BBII's reply evidence is GRANTED. Accordingly, BBII's administrative motion to strike is DENIED.

in 2013. Declaration of Gregory S. Martin ISO BBII's Opposition to PB&A's Motion to Compel (Dkt. No. 68-1) ¶ 2. BBII's counsel attests that "[p]rior to the DRB, and in anticipation of litigation, BBII retained [VAK] to evaluate potential claims against" two other entities involved in the Project. Declaration of Gregory S. Martin ISO BBII's Opposition to PB&A's Motion to Compel ¶ 3. BBII and VAK formalized their relationship in an engagement letter dated December 28, 2012, which provided that all services would be as a non-testifying expert unless decided otherwise. Supplemental Declaration of Gregory S. Martin ISO Motion for Disqualification and Other Sanctions ("Supp. Martin Decl.") (Dkt. No. 98-1), Ex. 8 (Dkt. No. 98-3). The engagement letter also contained a confidentiality clause. *Id.*

VAK subsequently prepared two reports, dated April 2, 2013 and July 11, 2013, which BBII shared with PB&A. Declaration of Gregory S. Martin ISO BBII's Opposition to PB&A's Motion to Compel ¶ 5. The reports pertain to the Project's access trestle and internal bracing system. *See* Declaration of Julie M. Walker ISO PB&A's Motion to Compel (Dkt. No. 62-1), Ex. D (Dkt. No. 62-7) (April 2013 report); Ex. E (Dkt. No. 62-8) (July 2013 report).

**B.     Instant Action**

BBII filed this suit against PB&A in March 2016 for breach of contract and contract indemnification. Complaint (Dkt. No. 1). BBII alleges that PB&A failed to properly design the access trestle and the internal bracing system on the Project, resulting in increased costs for BBII. Compl. ¶¶ 31-32. PB&A brings counterclaims against BBII for breach of contract and unjust enrichment, alleging that BBII breached its duties under the Professional Services Agreement ("PSA") by "failing to provide PB&A with complete and reconcilable design criteria, objectives and other design parameters as well as failing to pay PB&A for services rendered pursuant to the PSA." Amended Counterclaims (Dkt. No. 18) ¶ 15.

After learning that BBII and its counsel had provided PB&A with a copy of a July 2013 report prepared by VAK, Julie Walker, one of PB&A's attorneys, contacted VAK on April 15, 2016, to inquire about retaining VAK as an expert on PB&A's behalf. Declaration of Julie M. Walker ISO PB&A's Objection to Reply Evidence ("Supp. Walker Decl.") (Dkt. No. 100-1) ¶ 3. Vello Koiv of VAK told Walker that "the last contact he had with BBII or its counsel was the day

2

he testified at the DRB hearing in November 2013[.]" *Id.* Walker asked Koiv if he had an engagement letter with BBII and "he indicated he did not think that he did, but that he would search his file and let [Walker] know." *Id.*

Walker next contacted VAK on May 3, 2016, when she emailed to inquire about witness rates. *Id.* ¶ 4; Supp. Martin Decl., Ex. 7 (Dkt. No. 98-2). The following day, Koiv provided Walker with VAK's witness rate and attached VAK's engagement letter with BBII from December 2012. Supp. Martin Decl., Exs. 7-8. After receiving the engagement letter, Walker "did not pursue further engagement of VAK." Supp. Walker Decl. ¶ 6.

On May 18, 2016, Walker emailed BBII's counsel a copy of a document subpoena that she planned to serve on VAK for its files. Supp. Martin Decl., Ex. 10. She separately sent Koiv the document subpoena and told him that he would hear from BBII if it had an objection. Supp. Martin Decl., Ex. 9; Supp. Walker Decl. ¶ 6. On May 23, 2016, Koiv emailed Walker that BBII planned to object to the subpoena. Supp. Martin Decl., Ex. 9; Supp. Walker Decl. ¶ 7.

That same day, one of BBII's attorneys, Gregory Martin, emailed Walker to inform her that VAK "was retained as a non-testifying expert in the related [DRB] proceeding, and that BBII objected to discovery of the documents PB&A requested in its May 18, 2016 subpoena on VAK." Declaration of Gregory S. Martin ISO Motion for Disqualification and Other Sanctions ("Martin Decl.") (Dkt. No. 91-1) at ¶ 2.[2] The parties then filed a joint discovery dispute statement. Dkt. No. 22. After discussion of the dispute at the June 7, 2016 case management conference, I noted that VAK was "a non-testifying expert retained by plaintiff in an earlier, related dispute." Dkt. No. 23. I precluded discovery of VAK's file and records, without prejudice to PB&A bringing a motion later. *Id.*

Walker's next communication with VAK occurred on June 10, 2016, when Koiv emailed to ask about the status of the objections. Supp. Walker Decl. ¶ 8. Two days later, Walker told

---

[2] This declaration in support of BBII's Emergency Motion for Disqualification and Other Sanctions does not authenticate the other exhibits attached. PB&A argues that this violates the civil local rules and requests that I strike BBII's Motion for Disqualification and Other Sanctions. Opposition (Dkt. No. 94) at 9-10. PB&A also argues the motion should be stricken for noncompliance with Civil Local Rules 37-1 and 37-4. The request to strike the motion is DENIED, but BBII is admonished to comply with the Local Rules in all future filings.

1    Koiv that the court had not yet decided whether to enforce the subpoena, advised him not to
2    produce anything, and stated, "I can call you this week to give you more details." Supp. Martin
3    Decl., Ex. 11. However, Walker avers that she did not follow up with Koiv during the week
4    because he responded by email, stating, "Thanks. Will standby." Supp. Walker Decl. ¶ 9, Ex. B.
5    PB&A's counsel had no further contact with Koiv until after February 15, 2017. *Id.* ¶ 10.
6        Importantly, Walker declares, "I have had no substantive discussion with Mr. Koiv about
7    the Transbay project, PB&A's work on the project or VAK's opinions in support of PB&A's
8    work. The only mental impressions, confirmations, clarifications, direction or theories I have
9    developed in this case regarding VAK derive solely and entirely from the two reports issued by
10   VAK in connection with the DRB proceeding – both of which were disclosed to my client by BBII
11   or its counsel." *Id.* ¶ 11.
12       During discovery in this case, BBII produced to PB&A a copy of VAK's April 2013
13   Access Trestle report on several occasions, including July 14, 2016, August 18, 2016, and
14   "multiple times" in September 2016 through responses to discovery requests, the custodian files of
15   BBII witnesses, and incorporated in a PowerPoint as presented to Webcor/Obayashi. Declaration
16   of Julie M. Walker ("Walker Decl.") (Dkt. No. 94-2) ¶¶ 2-4. BBII also produced VAK's July
17   2013 report during discovery in this case without objection. Second Declaration of Julie M.
18   Walker ISO PB&A's Motion to Compel (Dkt. No. 73-6) ¶ 3.
19       On January 10, 2017, PB&A filed a renewed motion to compel production under the
20   subpoena directed to VAK. Dkt. No. 62. On February 15, 2017, I ordered:
21   
22   > Plaintiff shall produce all VAK reports and the documents on which its opinions were based. Defendant is not entitled to private communications between VAK and plaintiff, which would be protected as work product. With these limits, the motion to compel production is granted.
23   
24   Dkt. No. 88. Two days later, BBII produced to PB&A the documents on which VAK's opinions
25   were based. Martin Decl. ¶ 7, Ex. 2.
26       Later that afternoon, PB&A's counsel requested "for the first time" to depose Koiv. *Id.* ¶
27   8, Ex. 4. BBII refused this request on the basis that Koiv was retained as a non-testifying expert.
28   *Id.* ¶ 9, Ex. 4.

4

That same day, Stalmack contacted Koiv by telephone, informing him of my February 15, 2017 Order, requesting that Koiv produce his file, and advising him not to produce any correspondence with BBII. Declaration of Todd J. Stalmack (Dkt. No. 94-1) ¶ 4. Stalmack also told Koiv that PB&A would like to take his deposition, and Koiv agreed to sit for a deposition in Portland, Oregon. *Id.* Stalmack declares that they did not discuss the substance of Koiv's opinions or testimony. *Id.* After that phone call, Stalmack emailed Koiv, attaching my order and the document subpoena, again advising him not to produce any correspondence with BBII, and discussing scheduling of Koiv's deposition. *Id.* ¶ 5; Martin Decl., Ex. 3.

On February 22, 2017, VAK produced its project file to PB&A. Stalmack Decl. ¶ 6. The file did not contain any correspondence with BBII. *Id.* That day, Koiv and Stalmack also exchanged emails regarding Koiv's deposition. Stalmack Decl. ¶¶ 7-8. They agreed on March 17, 2017, at 9 a.m. in Portland for the deposition and Koiv waived service. Stalmack Decl., Ex. B (Dkt. No. 94-4). Koiv then asked how long the deposition was expected to last and stated that he would arrange a place for the deposition. Stalmack Decl., Ex. C (Dkt. No. 94-5). Stalmack agreed with Koiv that the deposition would not take all day, but stated he would confirm. *Id.*

On February 23, 2017, a paralegal with PB&A's law firm emailed Koiv and another member of VAK regarding selecting a location for the deposition in Portland. Stalmack Decl., Ex. D (Dkt. No. 94-6). In his response, Koiv stated, "I was contacted by Greg Martin, the attorney for Balfour. He was suggesting his place in SF. That would mean I would have to travel to SF. Thought you should know." *Id.* Martin attests that earlier in the day, "BBII counsel inquired upon VAK that if the VAK deposition went forward whether VAK could travel to San Francisco." Supplemental Declaration of Gregory S. Martin (Dkt. No. 98-1) ¶ 3. The same day, BBII's counsel and PB&A's counsel attended the deposition of PB&A's expert Brian McDonald. *Id.* ¶¶ 2-3. During the deposition, PB&A's counsel mentioned that "if BBII wants the deposition of Vello Koiv to occur in San Francisco that BBII must pay for VAK to travel to San Francisco." *Id.* ¶ 3.

Also on February 23, 2017, BBII's counsel emailed PB&A's counsel that his firm had learned that PB&A "improperly contacted BBII's non-testifying expert without coordinating or

5

even advising us." Stalmack Decl., Ex. E (Dkt. No. 94-14). Martin demanded that PB&A have no further contact with VAK and stated that BBII would be filing an emergency motion the following day. *Id.* The next day, Stalmack responded by offering to send BBII copies of what VAK produced. *Id.* That afternoon, PB&A's counsel produced to BBII what VAK had sent to PB&A on February 22, 2017. Stalmack Decl. ¶ 12. After receiving BBII's objections to PB&A's contacting VAK and obtaining his file, Stalmack did not have further contact with VAK. Stalmack Decl. ¶ 11.

BBII's counsel did not know about the communication between Stalmack and VAK until February 23, 2017, or the communications between Walker and VAK until February 27, 2017. Supp. Martin Decl. ¶¶ 2, 8. Martin asserts that "[a]t all times counsel for BBII has informed and maintained to counsel for PB&A that VAK is a retained non-testifying expert to BBII." *Id.* ¶¶ 11-12. Additionally, although BBII has not actively involved VAK in this action, Martin claims that he believed that VAK was available to assist BBII as a consulting expert closer to trial. *Id.* ¶ 13(a). Because of the communications between VAK and PB&A, Martin asserts that PB&A's counsel "has poisoned the relationship between VAK and BBII." *Id.* ¶ 13.

**LEGAL STANDARD**

Civil Local Rule 1-4 provides that the "failure by counsel or a party to comply with any duly promulgated local rule or any Federal Rule may be a ground for imposition of any authorized sanction." "Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). Courts have inherent power to impose sanctions for "a full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Also, "[d]istrict judges have an arsenal of sanctions they can impose for unethical behavior," including monetary sanctions, contempt, and the disqualification of counsel. *Erickson v. Newmar Corporation*, 87 F.3d 298, 303 (9th Cir. 1996). But "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

"[A] district court may levy sanctions pursuant to its inherent power for 'willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (quoting *Fink v. Gomez*, 239 F.3d 989, 991-93 (9th Cir. 2001)). The Ninth Circuit has stated that, "it is clear that a 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Evon*, 688 F.3d at 1035. Also, "[s]anctions may be imposed under a court's inherent powers 'if the court specifically finds bad faith or conduct tantamount to bad faith,' and '[a]s long as a party receives an appropriate hearing . . . the party may be sanctioned for abuses of process occurring beyond the courtroom . . . .'" *Loop AI Labs Inc v. Gatti*, No. 15-cv-0798-HSG(DMR), 2017 WL 386344, at *4 (N.D. Cal. Jan. 27, 2017) (internal citations omitted). Bad faith includes "a broad range of willful improper conduct." *Fink*, 239 F.3d at 992. "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994.

## DISCUSSION

BBII asserts that sanctions are warranted because PB&A's counsel engaged in *ex parte* contact with VAK, BBII's non-testifying expert retained for an earlier, related dispute. In particular, BBII requests that I: (1) disqualify PB&A's counsel; (2) require PB&A's counsel to disclose to BBII all documents they have obtained directly from VAK without going through counsel; (3) order PB&A's counsel to destroy all documents received directly from VAK; (4) enjoin PB&A's counsel from engaging in any further ex parte communication with VAK and any of BBII's other experts; (5) prohibit PB&A from deposing VAK; (6) prohibit PB&A from relying on VAK's opinions in this case; and (7) require PB&A to pay BBII's attorney's fees and costs for bringing this motion. Mot. at 2.

### A. Improper Conduct

BBII argues that PB&A's counsel violated the Federal Rules of Civil Procedure and circumvented my prior order. Mot. at 3. In particular, Federal Rule of Civil Procedure 26(b)(4)

7

"prohibits *ex parte* communication with the opposing side's expert." *Krzyzanowski v. Orkin Exterminating Co.*, No. C 07-05362 SBA, 2009 WL 4050674, at *4 (N.D. Cal. Nov. 20, 2009) (collecting cases). Additionally, my February 15, 2017 Order directed "plaintiff"—not VAK—to produce certain documents.

This is not a close question. No later than May 23, 2016, PB&A's counsel knew that BBII had previously retained VAK as a non-testifying expert. However, PB&A's counsel had *ex parte* discussions with VAK regarding the document subpoena and deposition scheduling in June 2016 and February 2017. BBII complied with my February 15, 2017 Order by producing VAK's documents to PB&A on February 21, 2017. But later that day, PB&A's counsel communicated directly with VAK to obtain the same documents. As a result, VAK provided its entire project file, except for any confidential communications between it and BBII.

PB&A's explanation for this behavior is meritless. PB&A argues that, because VAK was not retained by BBII for this case and the February 15, 2017 Order permitted discovery of some of VAK's materials, VAK is merely a "fact witness" whose reports PB&A intends to rely upon to establish its judicial estoppel defense. Oppo. at 2-3. Framing its conduct as solely "administrative contact," PB&A argues that it violated no court order by communicating directly with a fact witness. *Id.* Although BBII's use of VAK as an expert is limited to prior disputes, the issues in this case substantially overlap with those in the prior disputes. VAK wrote reports on the access trestle and the internal bracing system—the very same Project components on which BBII bases its current claims against PB&A. Because the issues are related, the risk of PB&A gaining BBII's privileged or confidential information relevant to this action through *ex parte* communications with VAK remains the same regardless of whether BBII has engaged VAK for this litigation. PB&A's counsel's *ex parte* contact with VAK after learning that it had previously been retained by BBII for a related dispute was improper.

PB&A also states that it "believed it is entitled to production of VAK's files directly from VAK in addition to BBII" because the order did not prohibit contact with VAK and because PB&A "has found numerous instances of inconsistencies between what BBII produced, and what BBII claims is available - when compared to productions received from other sources." Oppo. at 4

8

n.1. This excuse carries no weight. Although my order did not explicitly prohibit contact between PB&A and VAK, there is no ambiguity that I directed BBII (and no one else) to produce the sought after documents. Also, PB&A's counsel had more reasonable methods to address the purported insufficiency of BBII's production. PB&A should have simply raised this issue with BBII. And if the parties could not resolve the issue after meeting and conferring, they could have sent me a joint letter describing their discovery dispute. There is no question that PB&A's counsel knew of this avenue; I have received several such discovery dispute letters throughout this case. Accordingly, PB&A has not presented any legitimate reason for its *ex parte* contact with VAK.

Additionally, PB&A's counsel was inaccurate in briefing this motion. PB&A's opposition brief states, "PB&A has never sought to retain VAK, or use it as its own expert." Oppo. at 5. But BBII's reply evidence shows that this statement is false. In April and May 2016, PB&A's counsel contacted VAK to retain it as an expert. Supp. Martin Decl., Ex. 7. In its surreply, PB&A asserts that its statement that it never sought to retain VAK "obviously refers to PB&A's actions after it learned of VAK's confidential agreement with BBII." Surreply at 4. There is nothing in the brief "obviously" limiting the statement in such a way.

### B. Sanctions

I must next decide whether the requested sanctions are appropriate. District courts have inherent authority to disqualify counsel. *See United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996). I apply state law in determining whether disqualification is warranted. *In re County of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000).

"Because of their susceptibility to tactical abuse, [m]otions to disqualify counsel are strongly disfavored" and "should be subjected to particularly strict judicial scrutiny." *Oracle Am., Inc. v. Innovative Tech. Distrib., LLC*, 11-cv-01043-LHK, 2011 WL 2940313, at *4 (N.D. Cal. July 20, 2011) (quotation marks omitted). Courts must also be cognizant of the "substantial hardship" and the "monetary and other costs of finding a replacement" on parties whose counsel is disqualified. *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 300 (1989). Finally, "the purpose of a disqualification must be prophylactic; an attorney may not be disqualified purely as a punitive or disciplinary measure." *Neal v. Health Net, Inc.*, 100 Cal. App. 4th 831, 844 (2002); *see also*

1  *Baugh v. Garl*, 137 Cal. App. 4th 737, 744 (2006) ("The purpose of disqualification is not to
2  punish a transgression of professional ethics. Disqualification is only justified where the
3  misconduct will have a 'continuing effect' on judicial proceedings." (internal citations omitted)).

4      BBII fails to show prejudice or a continuing effect on these proceedings from PB&A's
5  counsel's conduct. VAK turned over its project file, but did not disclose any protected
6  communications between BBII's counsel and VAK. BBII argues that the "production included
7  drafts of reports and other documents that were not within the scope of the February 15, 2017
8  Order," and that "PB&A obtained protected documents." Mot. at 3; Reply at 5. Regarding the
9  drafts, PB&A argues that there is no prejudice because it intends to use VAK's final reports to
10 support its defenses and "would have no motive to tactically use any draft version to cross-
11 examine VAK, or call into question the conclusions reached in the final reports." Oppo. at 4-5.
12 BBII offers no argument to contradict this. Nor does BBII identify any other specific documents
13 that are outside the scope of my order. Because PB&A provided BBII with copies of everything
14 that it received from VAK for BBII's review on February 24, 2017, BBII should have reasonably
15 been able to identify such documents if they existed, but it did not do so.

16     In its reply brief, BBII introduces a new theory of prejudice: PB&A "directly interfered
17 in" and "poisoned" the relationship between BBII and VAK. Reply at 2, 4; Supp. Martin Decl.
18 ¶ 13. BBII argues that it will "never know what . . . theories PB&A's counsel developed from
19 their discussions with VAK" and that PB&A's conduct creates an appearance of impropriety.
20 Reply at 5. Moreover, Martin declares, "I reasonably believed that VAK was available to assist
21 BBII as a consulting expert closer to the trial date." Supp. Martin Decl. ¶ 13(a).

22     The prejudice to BBII from not being able to use VAK as a consulting expert later in this
23 case because of the purportedly poisoned relationship is minimal. Unlike in *Erickson,* where
24 defense counsel's improper contact with the plaintiff's expert had a "prejudicial effect on [the
25 plaintiff's] ability to present his case" because he was left with no expert at trial, BBII has not
26 involved VAK in this litigation. It hired another expert. *See* BBII's Opposition to Motion to
27 Compel (Dkt. No. 68) at 9:4; *see also Erickson*, 87 F.3d at 302-03. It seems unlikely that BBII
28 would rely on VAK for consulting in this case given that BBII asserted in earlier briefing that

"VAK's opinion, at least with respect to the issues relevant to this case was wrong[.]" *Id.* at 8:13-14. BBII will not be left without an expert at trial or lose an expert who has been working on this case because of PB&A's counsel's contact with VAK. Nor do I credit BBII's statement that it will never know what PB&A gained from conversations with VAK. PB&A's counsel provided declarations detailing their discussions; BBII could have sought more information from VAK if it thought the declarations were not credible.[3] *See Kane v. Chobani, Inc.*, No. 12-cv-02425-LHK, 2013 WL 3991107 (N.D. Cal. Aug. 2, 2013) (declining to disqualify plaintiff's counsel based on "hypothetical disclosures" by defendant's expert).

Additionally, I find relevant the substantial hardship that PB&A would suffer if its counsel were disqualified this close to trial. *See Gregori*, 207 Cal.App.3d at 300. Fact discovery closes on March 17, 2017; dispositive motions must be heard by April 19, 2017; and trial is set for June 19, 2017. Based on the substantial amount of discovery completed and the upcoming deadlines, disqualification would have a severe impact on "the progress of this litigation and the ability of [PB&A] to effectively move the case to conclusion without unnecessary costs." *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2015 WL 7566741, at *7 (N.D. Cal. Nov. 25, 2015).

In sum, disqualification of PB&A's counsel is unwarranted because of the lack of prejudice to BBII and the substantial hardship that PB&A would face if it lost counsel at this stage. I also decline to completely prohibit PB&A's use of the VAK documents (as provided by BBII). The reports may be used to show positions that were presented in the underlying proceedings, if evidence to that effect exists and is admissible.[4]

---

[3] BBII's request to depose PB&A's counsel regarding the communications with VAK is DENIED. *See* Mot. at 5 n.4.

[4] In February 2017, BBII emailed PB&A that it had inadvertently produced the April 2013 VAK report, asserted that the report was protected by the non-testifying expert privilege, and requested the document be destroyed. Martin Decl., Ex. 5. PB&A requests that I overrule BBII's inadvertent disclosure claim because the report was produced by BBII on multiple occasions and used by PB&A earlier in this litigation without objection from BBII, including in a discovery-related motion filed in the Middle District of Florida and during a deposition. Oppo. at 7-8, 10. However, I need not address BBII's seemingly untimely claim of inadvertent disclosure because I already ordered BBII to produce VAK's reports. Dkt. No. 88. Thus, this argument is moot.

That said, PB&A is prohibited from having any further ex parte contact with VAK. To the extent that PB&A has not already done so, it shall disclose to BBII and destroy all documents that it received through *ex parte* discussions.

The parties agreed to stipulate to the authenticity of the VAK reports and other documents that I ordered to be produced. This negates any stated need to depose VAK. Civil Minutes (Dkt. No. 104). The written stipulation shall be submitted for my approval within the next ten days.

Finally, BBII is awarded its fees and costs for bringing this motion. The parties are directed to meet and confer concerning a reasonable amount. If the parties are unable to reach an agreement, BBII shall file a motion for fees and costs within 30 days.

## CONCLUSION

For the reasons discussed above, the Motion for Disqualification and Other Sanctions is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Dated: March 13, 2017

William H. Orrick
United States District Judge